```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - -x
WILLIAM ZABIT,                              :

                Plaintiff,                  :

      -against-                             :

BRANDOMETRY, LLC, f/k/a BrandTransact       :
Investments, LLC, BRANDOMETRY GROUP, LLC,      COMPLAINT
LARRY A. MEDIN, LAM ASSOCIATES, INC.,       :
SUSAN AVARDE, TONY WENZEL,
BRANDLOGIC CORP. d/b/a Tenet Partners,      :
COREBRAND ANALYTICS, LLC, d/b/a Tenet
Partners, COREBRAND DATA SCIENCE,           :
TENET PARTNERS, HAMPTON BRIDWELL,
JAMES GREGORY, TOROSO INVESTMENTS, LLC,     :  20 Civ. 555
d/b/a Tidal Growth Consultants,
MICHAEL VENUTO, ASCI FUNDS,                 :
EXPONENTIAL ETFs, PHIL BAK,
CHARLES A. RAGAUSS, EQM INDEXES, LLC,       :
JANE EDMONDSON, FRANK ZARABI, a/k/a
Farhad M. Zarabi a/k/a Farhad Zarabi,       :
BACON LAW GROUP and THOMAS C. BACON,
                                            :
                Defendants.
- - - - - - - - - - - - - - - - - - - - - -x
```

Plaintiff, WILLIAM ZABIT, by his attorney, Alexander E. Eisemann, for his complaint, complains of the defendants and respectfully shows to the Court as follows:

## PARTIES

1.   Plaintiff WILLIAM ZABIT ("ZABIT") is a resident of the State of Wisconsin residing at 5355 Hansons Landing, No. 404, Madison, Wisconsin 53704.  ZABIT is the Founder and Chief Executive Officer of Brand Transact Worldwide, Inc. ("BTWW"), the developer and exclusive owner of the intellectual property known as the BrandTransact 50 Index, which is described more fully below.

2. Defendant BRANDOMETRY LLC ("BRANDOMETRY") is a limited liability corporation which was originally organized as BrandTransact Investments, LLC ("BTI") under the laws of the State of Delaware on September 14, 2015, and it currently has its offices at 320 East 57th Street, Apartment 15A, New York, New York 10022.  Up until June 2018, BRANDOMETRY was known as and operated under the name of "BrandTransact Investments" and had its offices at 48 Wall Street, Suite 1100, New York, New York 10005.

3. Defendant BRANDOMETRY GROUP LLC ("BRANDOMETRY GROUP"), is a limited liability corporation duly formed under the laws of the State of Delaware.  Upon information and belief, it maintains its offices at 320 East 57th Street, Apartment 15A, New York, New York 10022.  In this complaint, BRANDOMETRY refers to BRANDOMETRY LLC but each instance in which "BRANDOMETRY" is used, it should be deemed to include BRANDOMETRY GROUP as well.

4. Defendant LARRY A. MEDIN ("MEDIN") is the Chief Executive Officer of BRANDOMETRY and serves on BRANDOMETRY's "Index Committee."  MEDIN is a resident of the State of New York, residing at 320 East 57th Street, Apartment 15A, New York, New York 10022.

5. Defendant LAM ASSOCIATES, INC. ("LAM") is a corporation formed under the laws of the State of Delaware, with offices located at 320 East 57th Street New York, New York, and 4018 Dixie Canyon Avenue, Sherman Oaks, California 91423.  MEDIN is LAM'S founder and President.

6. Defendant SUSAN AVARDE ("AVARDE") is the Chief Strategist of BRANDOMETRY. Upon information and belief, AVARDE is a resident of the State of New York.

7. Defendant TONY WENZEL ("WENZEL") is the President of BRANDOMETRY. Upon information and belief, WENZEL is a resident of the State of Washington, residing in the City of Seattle.

8. Defendant BRANDLOGIC CORP. ("BRANDLOGIC"), is a corporation duly incorporated under the laws of the State of Delaware, with offices at 122 West 27th Street, 9th Floor, New York, New York 10001. BRANDLOGIC does business under the name of Tenet Partners. According to statements made by BRANDOMETRY, BRANDLOGIC is a BRANDOMETRY "affiliate partner."

9. Defendant COREBRAND ANALYTICS, LLC ("COREBRAND ANALYTICS"), is, on information and belief, a limited liability corporation duly formed under the laws of a state within the United States, with offices at 122 West 27th Street, 9th Floor, New York, New York 10001. COREBRAND ANALYTICS does business under the name of Tenet Partners.

10. Defendant COREBRAND DATA SCIENCE ("COREBRAND DATA") is, on information and belief, a legal entity duly formed under the laws of a state within the United States, with offices at 122 West 27th Street, 9th Floor, New York, New York 10001.

11. Defendant TENET PARTNERS ("TENET PARTNERS" or "TENET") is, on information belief, a legal entity duly formed under the laws of a state within the United States, with offices

at 122 West 27th Street, 9th Floor, New York, New York 10001. According to TENET's website, BRANDLOGIC and COREBRAND ANALYTICS "joined forces" in 2014, and relaunched that combined entity as TENET PARTNERS.  Upon further information and belief, defendants BRANDLOGIC, COREBRAND ANALYTICS, both already doing business under the name "Tenet Partners," COREBRAND DATA and TENET PARTNERS are all alter egos of each other.  In each instance in which "TENET PARTNERS" or "TENET" is used in this complaint, it should be deemed to include BRANDLOGIC, COREBRAND ANALYTICS and COREBRAND DATA as well.

12. Defendant HAMPTON BRIDWELL ("BRIDWELL") is the Chief Executive Officer and Managing Partner of TENET PARTNERS and, upon information and belief, is a resident of Redding, Connecticut.

13. Defendant JAMES GREGORY ("GREGORY") is the Chairman of TENET PARTNERS and serves on BRANDOMETRY's Index Committee.  Upon information and belief, GREGORY resides at 7408 Heritage Grand Place, Bradenton, Florida 34212.

14. Defendant TOROSO INVESTMENTS ("TOROSO") is an investment management company and a BRANDOMETRY "affiliate partner."  It is headquartered at 115 West 29th Street, Suite 811, New York, New York 10001.  TOROSO also does business under the name of Tidal Growth Consultants.

15. Defendant MICHAEL VENUTO ("VENUTO") is the Chief Investment officer of TOROSO and serves on BRANDOMETRY's Index

Committee.  Upon information and belief, is a resident of the State of New Jersey.

16.  Defendant ASCI FUNDS ("ASCI") is an LLC with offices located at 625 Avis Drive, Ann Arbor, Michigan 48108.  "ASCI" is an abbreviation for American Customer Satisfaction Index.  ASCI has its headquarters at 625 Avis Drive, Ann Arbor, Michigan.

17.  Defendant EXPONENTIAL ETFs ("EXPONENTIAL ETFs") is a sister entity of ASCI.  EXPONENTIAL ETFs also has its headquarters at 625 Avis Drive in Ann Arbor, Michigan.

18.  Defendant PHIL BAK ("BAK") is the Chief Executive Officer of both ASCI and EXPONENTIAL and serves on BRANDOMETRY's Index Committee.  Upon information and belief, BAK is a resident of the State of Michigan.

19.  Defendant CHARLES A. RAGAUSS ("RAGAUSS") is the Director of Product Management at EXPONENTIAL and, upon information and belief, is a resident of the State of Michigan.

20.  Defendant EQM INDEXES LLC ("EQM") is a Limited Liability Corporation, with offices located at 10620 Treena Street, Suite 230, San Diego, California 92131.  EQM is also listed as a BRANDOMETRY "affiliate partner."

21.  Defendant JANE EDMONDSON ("EDMONDSON") is the Co-Founder and Chief Executive Officer of EQM and is the Chair and a member of BRANDOMETRY's Index Committee.  Upon information and belief, EDMONDSON is a resident of the State of California.

22. Defendant FRANK ZARABI a/k/a Farhad M. Zarabi and Farhad Zarabi ("ZARABI") is a citizen of the State of California, and resides in Beverly Hills, California. ZARABI maintains an office at 5553-B Bandini Boulevard, Bell, California 90201, and is positioned as the majority shareholder of BRANDOMETRY.

23. Defendant BACON LAW GROUP is a law firm that maintains its offices in the State of California with an address of 1601 North Sepulveda Boulevard, No. 349, Manhattan Beach, California 90266.

24. Defendant THOMAS C. BACON ("BACON") is the principal of the BACON LAW GROUP and is a citizen of the State of California. BACON maintains his offices at 1601 North Sepulveda Boulevard, No. 349, Manhattan Beach, California 90266.

## JURISDICTION AND VENUE

25. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1332, 1338 & 1367 based on diversity of citizenship. The amount in controversy exceeds $75,000.

26. Venue of this action is properly in this district, pursuant to 28 U.S.C. § 1391(b), on the grounds that a defendant may be found, has offices and conducts business in this district, and because substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district.

## FACTS

27. Beginning in 2014, ZABIT and Benjamin Bidlack began development of a brand and intangible asset index concept

with the goal of bringing validation to the tie between a company's brand and other intangible assets and a company's stock price.  In May of 2015, using publicly-available brand data from Brand Finance, a company headquartered in London, England, BTWW created a trial version of the index, which would eventually become the BTW50 Index.

28.   BTWW launched the BTW50 Index *"Powered by Wilshire"* on Wall Street on July 15, 2016 using brand value data from defendant TENET PARTNERS.  The proprietary algorithm calculated the spread between a company's brand value and its stock price to identify stocks with unrealized value.

29.   In July 2015, ZABIT and defendant MEDIN formed BrandTransact Investments, LLC ("BTI"), to develop and to market financial products based on the BTW50 Index and other complementary indexes to be developed in the future.  They agreed that ZABIT would own 54% of BTI and MEDIN would own 46%.  MEDIN was also given the title of BTI's Chief Executive Officer.

30.   A year later, on June 13, 2017, BTI, by now renamed Brandometry, launched the Brand Value Exchange Traded Fund on the New York Stock Exchange (the "BVAL ETF").  The BVAL ETF tracked the BTW50 Index.

31.   On December 1, 2016, MEDIN and ZABIT signed a Limited Liability Company Operating Agreement formalizing BTI's structure (the "First Operating Agreement").  As agreed, ZABIT was given a 54% ownership interest.  MEDIN was given a 46%

ownership interest.  MEDIN was designated as "Managing Member" of BTI, responsible for the management of its business.

32.  On December 1, 2016, BTI and ZABIT signed an agreement setting out the terms of loans ZABIT had already made, and expected to continue to make going forward, to BTI.  Under that agreement, those loans would all be due and payable upon "the occurrence of a Capital Event involving [BTI]."

33.  Under the First Operating Agreement, if BTI were to raise capital through equity or debt, BTI would repay the outstanding loans of ZABIT before using funds for any other purposes.

34.  By late 2016, BTI needed additional working capital.  As noted above, any capital raised was supposed to be applied first, without any conditions, to pay off the loans ZABIT had been making to BTI, including a $255,000 loan ZABIT made to BTI using funds from his son's college fund.  MEDIN, however, made a deal with an investor, defendant ZARABI, under which ZABIT was required to give up his majority interest in BTI as a condition of ZARABI's providing of $900,000 in funding to BTI and paying off ZABIT's loans, including the $255,000 loan involving his son's college fund.

35.  MEDIN, with the knowing assistance of all the other defendants, drafted a Reorganization and a Second Operating Agreement for BTI.  They reduced ZABIT's ownership interest in BTI from 54% to 14%.  ZABIT signed both agreements without prejudice, which preserved his right to claim in this action that

-8-

$255,000 of the funds he was provided under the Second Operating Agreement should have been provided to him in addition to the compensation he was paid to give up his majority interest in BTI, not as part of it.

36. ZABIT's compensation for entering into the Second Operating Agreement for BTI was, therefore, $255,000 lower than it should have been under the terms of the controlling First Operating Agreement.

37. BTI/BRANDOMETRY, therefore, owes ZABIT $255,000 and has still not paid it.

38. Each of the other defendants knowingly and intentionally assisted MEDIN and BTI/BRANDOMETRY in their goal of wrongfully denying ZABIT payment of the additional $255,000.

39. MEDIN, with the knowing assistance of all the other defendants, breached the First Operating Agreement by eliminating ZABIT's ownership interests in BTI without repaying the $255,000 loan.

40. Upon information and belief, all the other defendants knew or should have known of the terms of the First Operating Agreement and, by lending their assistance to MEDIN's plan to deny ZABIT repayment of the $255,000 rightfully due him, tortiously interfered with ZABIT's business relationship with BTI.

41. Without the knowing assistance of each of the other defendants, some of whom, upon information and belief, received equity stakes in BTI and others who received other types

of compensation from BTI, MEDIN could not have eliminated ZABIT's interest and participation in BTI without repaying the $255,000 loan.

42. Each of the defendants knowingly and intentionally helped MEDIN and BTI achieve their goals of denying ZABIT payment of the $255,000 by providing critical support to their efforts to try to make BTI and its products, including the BVAL ETF, a success at ZABIT's expense. In providing that support, the defendants knew full well that BTI had to breach its agreements with ZABIT to succeed.

43. Defendant AVARDE and WENZEL, for example, assisted MEDIN by becoming members of the leadership team of BTI and helping it develop and to market an index that was based on the BTW50 Index.

44. Defendants BRANDLOGIC, COREBRAND ANALYTICS, COREBRAND DATA, TENET PARTNERS, BRIDWELL and GREGORY, assisted MEDIN and BTI by providing critical data to help develop and eventually to drive this other index.

45. Defendants TOROSO, VENUTO, EXPONENTIAL ETFs, ASCI, BAK, RAGAUSS, EQM and EDMONDSON helped MEDIN and BTI develop this other index.

46. Defendant ZARABI loaned MEDIN and BTI funds to help BTI develop this other index.

47. Defendants BACON and BACON LAW GROUP helped draft the agreements that both promised and then ultimately denied ZABIT the $255,000 loan repayment.

48. All of these defendants provided their assistance to MEDIN and ZABIT knowing full well that the financial compensation provided to them was available only because BTI was not paying ZABIT the $255,000 that was rightfully due him.

49. The other defendants were, accordingly, unjustly enriched by receiving portions of the $255,000 that should rightly have been paid to ZABIT.

50. MEDIN and the other defendants never provided ZABIT with the $255,000 in loan repayments to which he was entitled to be paid without having to relinquish his ownership interest in BTI.

51. The defendants' actions constitute a breach of contract and a tortious interference with a business relationship between ZABIT and BTI.

52. Each of the defendants has been unjustly enriched, jointly and severally, by $255,000, at ZABIT's expense.

## CLAIMS FOR RELIEF

### COUNT I

### Breach of Contract

53. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

54. Plaintiff and BTI had a valid agreement under which ZABIT was to be paid $255,000 in addition to the other compensation he received to relinquish his equity stake in BTI.

55. Plaintiff provided valid consideration when he entered into the contract.

56. Plaintiff performed his duties under the contract.

57. BTI failed to perform its duties under the contracts.

58. BTI's breached caused plaintiff damages in an amount to be proven at trial.

## COUNT II

### Tortious Interference with Contract

59. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

60. Plaintiff had a valid contract with BTI.

61. The defendants knew of that valid contract.

62. The defendants intentionally procured BTI's breach of that contrac.

63. Defendant's actions caused plaintiff damages in an amount to be proven at trial.

## COUNT III

### Tortious Interference with a Business Relationship

64. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

65. Plaintiff had a valid agreement with BTI, under which he was to receive $255,000 more than he was ultimately paid.

66. Defendants had knowledge of those agreements.

67. Defendants intentionally induced BTI to breach its contract with plaintiff or otherwise to render performance of the contract impossible by, <u>inter alia</u>, by providing material assistance to defendant MEDIN's efforts to obtain the benefit of plaintiff's contributions to BTI without fully compensating plaintiff.

68. Defendants' interference caused damages to plaintiff in an amount to be proven at trial.

## COUNT IV

### Unjust Enrichment

69. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

70. Defendants have collectively and individually received, or stand to receive, the benefit of the $255,000 that was rightly due to plaintiff.

71. By virtue of that, defendants have been, or will be, unjustly enriched at the expense of plaintiff, and are liable to plaintiff in an amount to be established at trial.

## DAMAGES

WHEREFORE, plaintiff demands judgment against the defendants as follows:

A. Damages in the amount, and/or an order requiring the return to plaintiff, of $255,000, plus interest; and

B. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       January 21, 2020

_____
ALEXANDER E. EISEMANN AE5405
Counsel for Plaintiff
   William Zabit
20 Vesey Street, Suite 400
New York, New York 10007
(212) 420-8300
aee@eislaw.com

-14-